| STATE OF LOUISIANA | * | NO. 2024-KA-0244 |
| --- | --- | --- |
| VERSUS | * | |
| | | COURT OF APPEAL |
| KENDALL GORDON | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 555-162, SECTION "H"
Honorable Camille Buras, Judge

* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

**LEDET, J., CONCURS IN THE RESULT.**

**HERMAN, J., DISSENTS AND ASSIGNS REASONS.**

**ERVIN-KNOTT, J., DISSENTS FOR REASONS ASSIGNED BY JUDGE HERMAN.**

Leo J. Palazzo
Mario A. Arteaga, Jr.
732 Behrman Highway
Suite F & G
Gretna, LA 70056

      COUNSEL FOR PLAINTIFF/APPELLANT

Elizabeth Baker Murrill
Louisiana Attorney General
J. Taylor Gray
J. Bryant Clark, Jr.
Assistants Louisiana Attorney General
P. O. Box 94005
Baton Rouge, LA 70804

Jason Rogers Williams
Orleans Parish District Attorney
Brad Scott
619 S. White Street
New Orleans, LA 70119

COUNSEL FOR DEFENDANT/APPELLEE

**ON REMAND—TRIAL COURT JUDGMENT REVERSED**
**January 9, 2026**

RLB
SCJ

On writ application by the State, the Louisiana Supreme Court remanded this case for reconsideration[1] citing our failure to apply the manifest error—clearly wrong standard of review in our original opinion.[2]   On remand, we confirm our reversal of the trial court's judgment for the reasons set forth below.

**Standard of review**

The Supreme Court cited the well-accepted principle that, "Appellate courts review wrongful conviction compensation rulings for manifest error."[3]  The Supreme Court proceeded to hold that our court had reviewed the case erroneously using a *de novo* standard and remanded the case.[4]

**Application of standard of review**

In 2010, Kendall Gordon ("Gordon") was convicted of armed robbery and second-degree murder of Patrice Comadore ("Patrice").  His conviction was

---

[1] The Supreme Court's writ disposition is found at *State v. Gordon*, 25-0268 (La. 9/24/25), __ So.3d __.

[2] This court's original opinion is found at *State v. Gordon*, 2024-0244 (La. App. 4 Cir. 1/29/25), *writ granted, decision rev'd,* 2025-00268 (La. 9/24/25).

[3] __ *So.3d__*, citing *Jones v. State,* 22-01455, p. 5 (La. 5/5/23), 362 So.3d 341, 345.

[4] Although our original opinion failed to express the applicable standard of review, the trial court opinion was reviewed under the manifest error or clearly wrong standard as is shown in the review below.

1

vacated based upon the "Joint Agreement and Motion to Vacate Conviction" filed the Orleans Parish District Attorney and Gordon in 2021. In that pleading, the prosecutor's office agreed that, "This Office now believes there is clear and convincing evidence which creates a reasonable likelihood that Mr. Gordon did not commit the offense for which he was convicted…" Gordon filed his petition for compensation for his wrongful incarceration in August 2022. The petition was denied by the trial court which held that, "Petitioner has failed to meet the burdens required in La. R. S. 15:572.8(A)(2), specifically, that he has failed to prove by clear and convincing evidence that he is factually innocent of the crime for which he was convicted." Our court disagreed with the trial court's finding and determined that it was clearly wrong and manifestly erroneous based primarily, but not exclusively, on the following facts:

1) The State investigated and prosecuted Gordon almost entirely based on Darceleen Comadore's ("Darceleen's") eyewitness identification of Gordon.[5] Darceleen withdrew that identification almost immediately. Darceleen testified that "a day or two after" her initial interview, she contacted the detective in charge of the investigation to alert him to her belief that Gordon was not involved in her sister's death. She made it clear that she had misidentified the assailant. She has been consistent in that recantation ever since.

2) We know with near certainty that Darceleen's identification was in error. The person she identified in her initial statement had fallen on top of her during the commission of the crimes. In that process, the person who fell on her transferred blood onto her clothing and telephone. She had heard a gunshot and concluded the person had been shot. While the bloody person was in direct contact with Darceleen and for some minutes thereafter, the bandana that had covered his face fell away and she was able to see him. From the very first interview, and in

---

[5] Darceleen is the sister of the deceased victim, Patrice Comadore, and was present at the scene when her sister was murdered.

every subsequent setting in which she testified, Darceleen described this person as the "younger" of the two perpetrators. Her initial interview with police was four hours after she witnessed her sister's murder. At that time, she thought she recognized the younger man as Gordon. She realized her error one or two days later and notified police that she was incorrect in her belief that she had seen Gordon. The record contains four transcripts of Darceleen's testimony. While there are some discrepancies in the transcripts, she is consistent in relating that she only identified the younger of the two men. Except for her initial contact with police, she is absolutely consistent in stating that Gordon was not the younger of the two perpetrators.

3) Ballistic testing proved that the same gun killed Patrice and Jessie Bibbins ("Bibbins"), a likely suspect in the crimes for which Gordon was convicted.[6] Police found two spent shell casings at the crime scene. Those casings matched the caliber of the bullets that killed both Patrice and Bibbins. Bibbins was found dead about a mile from the crime scene. Gordon turned himself in to police within 48 hours of the crime and he had no gunshot wounds.

4) Genetic testing alone does not positively exonerate Gordon. However, it is significant that no DNA identified as Gordon's was found at any site related to the crime. To the contrary, the DNA recovered from various items at the scene of the murder and on or near Bibbins' body ranged between 7 and 468 times less likely to come from Gordon than from Bibbins and another unknown male. None of the DNA samples show a likelihood that Gordon was the contributor.

Under the manifest error-clearly wrong standard, appellate courts may not set aside a trial court's factual findings unless those findings are clearly wrong in light of the record reviewed in its entirety. The Louisiana Supreme Court gave its most recent guidance for applying this standard in civil cases in *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/8/15), 193 So.3d 1110, 1115. In its decision, the court wrote, "In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the

---

[6] The evidence suggests that Bibbins is a more likely participant in the crimes as set forth in our original opinion.

setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety."

Our court has applied the same standard in wrongful incarceration claims, which are a unique mix of criminal and civil concepts. In *Ballard v. State*, 24-0606, p. 19 (La. App. 4 Cir. 3/14/25), 414 So.3d 800, 810, *writ denied*, 25-0450 (La. 6/3/25), 410 So. 3d 789, we wrote:

> In reviewing an application for compensation for wrongful conviction and imprisonment pursuant to La. R.S. 15:572.8, an appellate court "must afford great weight to the findings of the trier of fact and apply the manifest error standard." *State v. Ruano*, 2019-0709, p. 4 (La. App. 4 Cir. 3/4/19), 294 So.3d 44, 46 (citing *State v. Ford*, 50,525, p. 5 (La. App. 2 Cir. 5/18/16), 193 So.3d 1242, 1247). "Further, '[t]he issue is not whether the trial court's findings are right or wrong, but *whether they are reasonable on the record as a whole.*'" *Id.*

As we reviewed the trial court's ruling in the instant case, we were required to add a third layer of inquiry: did the trial court review the facts using the appropriate burden of proof? In order to prevail in a wrongful incarceration case, the plaintiff must prove its case by marshalling "clear and convincing scientific or non-scientific evidence" La. R.S. 15:572.8(A)(2). We are hampered in our effort to learn how the trial court concluded that Gordon did not meet this burden because there are no written reasons for judgment. In *Ballard*,[7] our court adopted the Louisiana Supreme Court's definition of the clear and convincing standard, which it described as follows: "The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence." *Talbot v. Talbot*, 03-0814, p. 10 (La. 12/12/03), 864 So.2d 590, 598.

---

[7] *Ballard* at 414 So. 3d 800, 810.

4

We agree with the State's argument that the DNA results are not dispositive; however, the DNA findings, in combination with all the evidence in the record, does make it "much more probable than not" that Gordon is factually innocent of the crime for which he was convicted. As shown above and in our original opinion, there is affirmative evidence that another person committed the crime for which Gordon was convicted. Bibbins had prior suspicious contact with the Comadore household and was shot by the same gun that killed Gordon's supposed victim. There is an absence of any physical or scientific evidence that Gordon was ever in the victim's home. The only witness identification tying Gordon to the crime was withdrawn within days and the recantation is supported strongly by other facts in the record.

To a large degree, the analysis of the standard of proof applied by the trial court and the question of whether that court's decision was manifestly erroneous and clearly wrong merge. The evidence supporting Gordon's factual innocence, and the absence of contradictory facts in the trial court record naturally and logically lead one to conclude that the trial court's findings are not reasonable, but are clearly wrong and manifestly erroneous. Applying the manifest error rule, we again reverse the trial court's judgment that denied Gordon's recovery.

**ON REMAND—TRIAL COURT JUDGMENT REVERSED**